James A. Byrne U.S. Courthouse
Attn: Clerk's Office, U.S. District Court
601 Market Street
Philadelphia, PA 19106

Eric Montez Pickett
_____ Defendant.

FILED
HARRISBURG, PA
MAY 16 2025
PER _____ DEPUTY CLERK

UNITED STATES DISTRICT COURT,
EASTERN District of PENNSYLVANIA
U.S. COURTHOUSE

MOTION FOR 28 U.S.C. §2241 18 U.S.C. 3624(c)(1)(2)

To Whom it May Concern,

Please be Advised at this time I am requesting to be credited with my First Step Act of 2018 (FSA) Earned time credits As per the attached Memorandum of Law. The BOP has been mandated by congress to award me with such credits against my Federal sentence. The shall be applied language of the FSA set forth in 18 U.S.C §3632 (d)(4)(c) is Mandatory Subject only to the list of 68 disqualifying offenses set forth in 18 U.S.C. §3632 (d)(4)(D). and the Preclusion on early release of inmates with a final order of deportation set forth in 18 U.S.C. §3632(d)(4)(E). I am not serving time for a disqualifying offense nor have a final order of deportation. These exceptions show that if congress had wished ~~already~~ to carve out from the MANDATORY "shall be applied language of 18 U.S.C. §3632(d)(4)(c) Another exception—namely, for prisoners with a Medium or High PATTERN score—It could and would have done so. See Attached Memorandum of law for details.

I was Denied by my unit team 4-1-25. and the warden told me to petition the courts.

Respectfully Submitted
Eric Pickett

of 18 U.S.C. § 3632 (d)(4)(c) another exception - namely for prisoners with a medium or high Pattern Score - it could and would have done so. See attached Memorandum of Law for details.

Memorandum of Law in Support of Request for FSA Earned time credits ("ETCs")

My question presented herein, is whether the FSA allows the BOP to implement a policy precluding Federal prisoners with medium (or high) Pattern scores from having their accrued ETCs applied to afford early release ("Medium/High Pattern Score Exclusion"). The FSA does not state anywhere explicitly that the BOP may do so. Nor does the BOP's recently-revised finalized implementation regulation (28 C.F.R. §523.44). Rather, this so do to the poor interpretation of congress's intent by BOP staff.

28 U.S.C. §3624(g)(1) - with sets forth the requirements for applicable of their accrued ETCs - does not preclude eligibility to Federal prisoners with medium (or high) Pattern Scores.
Federal prisoners who participate in and complete eligible evidence-based recidivism reduction programs and/or productive activities shall earn ETC pursuant

to the calculation formula provided in the statute. 18 U.S.C. §3632(d)(4)(A). Under §3632(d)(4)(C), These earned ETCs shall be applied towards time in prerelease custody or supervised release. The statute does not say may be applied or are to be applied in the Bop's discretion nor does not say may be applied or are to be applied in the Bop's discretion. Nor does it contain any language that rationally can be read to modify the simple and straightforward - "shall be applied directive. Consistently the language once again, is a mandatory directive. Of course, the FSA's shall directive to apply ETCs only applies if a prisoner is eligible under 18 U.S.C. §3624(g). The FSA expressly provides for which prisoners are ineligible through 18. U.S.C. §3632(b)(4)(D)-(E). This FSA statute denominates. Ineligible prisoners are prisoners who have been convicted on any of the listed 68 Federal offenses, or who have a final order of deportation. There is nothing in this clear language that can be read or stretched to encompass prisoners who have a medium (or high) Pattern score. The FSA's delineation of who is an eligible prisoner is set forth in 18 U.S.C. §3624(g). This FSA statute states that an "eligible prisoner is "one who has: (1) earned ETCs in an amount equal to the remainder of his term; (2) either has demonstrated recidivism risk recidivism risk during his term

"(2) assessments or has maintained a minimum or low recidivism risk during his term of imprisonment; (3) had the remainder of his term computed; and (4) if being placed on supervised release, has been determined to be a minimum or low risk to recidivate pursuant to his last assessment...". Some of 18 U.S.C. §3624(g) criteria obviously implicate the BOP's past exercise of its expertise and/or discretion, such as when it has made periodic risk assessments for prisoners over time. There is nothing in 18 U.S.C §3624(g), however, which says or implies that the prisoner presently has a medium (or high) Pattern Score.

Here, the problem of legislative interpretation lies on the BOP's risk assessments a demonstrated recidivism risk reduction or has maintained a minimum or low recidivism risk during the prisoner's term of imprisonment." (emphasis added). Clearly, Congress's use of the <u>conjunction</u> "or" – used as a Dictionary) emphasis added) – indicates that a federal prisoner's eligibility to apply for FTCs can be so in either of <u>Two</u> ways, that is, (1) by showing through the periodic risk reassessments a demonstrated recidivism risk reduction." that is, moving from a High to a Medium Pattern Score; or (2)

Earned Time Credits (ETCs)
Memorandum of Law in Support of Request for FSA

The Most obvious here, by Maintaining a minimum or low recidivism risk, during the Prisoner's Term of Imprisonment. Nevertheless, Nothing in the Statute explictly Preclude a Federal Prisoner with a High Pattern who is diligently Pursing to lower his/her PATTERN score Productive activities. From earning and applying 10 Days for every 30 days of successful Programming.

Indeed, 18 U.S.C. §3624(g) states just the opposite namely, that the FSA's early release provision applies "to a prisoner who has been found to meet the Four 18 U.S.C. §3624(g) criteria.

In sum. Under the clear terms of 18 U.S.C §3632(d)(4)(C), a Prisoner who has met the four criteria of 18 U.S.C. §3624(g) "Is" "eligible" for early release, "Shall have his/her ETCs applied. See, e.g., O'Bryant .Cox. No. CIV 21-4052, 2021 WL 3932875, at *3 (D.S.D. Sept. 1, 2021), The court examined the above-quoted language of 18 U.S.C. §3632(d)(4)(A) and (c) and found that the statutes' use of word "Shall" was Mandatory, as in imposed a duty rather than a grant of discretion. The court noted that in the FSA, Congress utilized "both Mandatory words and permissive words." and Its intent was clear in each

instance." *Id.*

Several additional matters underscore the mandatory nature of the above FSA language. First, like the FSA itself, the BOP possesses the discretion it now claims it possesses to impose an additional precondition on prisoners who seek early release through an application of their earned ETCs. That the BOP chose to omit from the regulation any mention that Medium (or High) Pattern Score inmates, the Medium/High PATTERN Score Exclusion, or anything of that nature, is telling. Second, on January 19, 2022, the BOP issued its Final FSA time credits" Rule (recently amended), which "codifies the [BOP's]." 87 Fed. Reg. 2705-01, 2022 WL 159155 (Jan. 19, 2022) ("Final Rule"). The Final Rule prefaces its text by noting that "[a]s required under the FSA, an inmate cannot earn (ETcs) if that inmate is serving a sentence for a disqualifying offense or has a disqualifying conviction." 87 Fed. Reg. at 2706. As with the implementing BOP regulation, no mention is made that inmates who have a Medium (or High) Pattern score are similarly ineligible – an exclusion from eligibility that plainly would have been a relevant matter to raise if the BOP was considering adding it to the statutory criteria, as it now claims it can do. Nevertheless, the BOP stated that

(t)he Bureau intends to adhere to the parameters of the FSA to permit application of [ETCs]" as authorized by the FSA in 18 U.S.C. §3632(d)(4)(C) and 18 U.S.C. §3624(g). 87 Fed. Reg. at 2712. Thus, in the Final Rule, the BoP clearly stated its intent to follow the terms of the FSA by applying ATCs to effect early release.

More compelling are the BoP's own words noting that "[i]t is outside the [BoP's] authority to alter the exclusions are stated in the FSA" and that the statutory exclusions may only be amended by Congress. 87 Fed. Reg. at 2713. In short, in its Final Rule, the BoP plainly recognized and acknowledges that it lacked the authority to modify the FSA's statutorily-designated ~~and acknowledges that it lacks~~ categories of which prisoners are eligible or ineligible to earn and have ETCs applied so as to result in early release — a position that is directly contrary to that taken here, in which the BoP essentially argues that it possesses an unconstrained discretion to impose additional exclusions not set forth in the FSA when it would be salutary to do so. The Final rule gave no indication that the BoP believed itself to possess the authority on which prisoners may obtain early release under the FSA. There is no hint on anything in this respect in the Final rule and, if anything, the

BoP made clear its view that it lacked the authority to impose this additional exclusion, stating that only "Congress could specify which prisoners are eligible for ETC-based early release. Had the BoP actually possessed the view that it may prevent prisoners from receiving FSA early release based on their Medium/High Pattern Score, it should have so stated in its earlier proposed rule, published on November 25th AD 2020, so as to allow Congress and members of the public the chance to comment on this proposed interpretation of BoP powers under the FSA. That it did not do so only underscores the unpersuasive nature of its argument here that the FSA's text affords it the authority and discretion to impose additional criteria for eligibility such as the Medium/High PATTERN Score Exclusion.

When a court is tasked with statutory construction it is fundamental that words generally should be "interpreted as taking their ordinary, contemporary, common meaning... at the time Congress enacted the statute." Wisconsin Cent. Ltd. v United States, ___ U.S. ___, 138 S.ct. 2067, 2074, 201 L.Ed. 2d 490 (2018) (citation omitted). Agencies exercise discretion only in the interstices created by statutory silence or ambiguity; they must always 'give effect to

early release mandatory for prisoners "eligible under 18 U.S.C. §3624(g). Two, by 18 U.S.C. §3624(g), Congress spelled out the prerequisites for a prisoner to be "eligible," which have been described earlier and do not contemplate any additional criteria or precondition to release akin to the Medium/High PATTERN Score Exclusion. Third, by 18 U.S.C. §3632(d)(4)(C), Congress explicitly determined which prisoners are ineligible to have the FSA's ETCs and early release provisions applied to them, and none of these expressly delineated categories include prisoners who have medium or high Pattern scores. Had congress wished to include prisoners who have medium or high Pattern Scores. Had congress wished to include prisoners who are "ineligible" under the FSA, It could and would have done so. The congressional intent expressed through the FSA's Mandatory provisions precludes interpreting that pertinent language of the FSA to allow the BOP to impose the additional precondition to early release eligibility contemplated by the Medium/High Pattern Score Exclusion. Such an interpretation would be contrary to the clear and unambiguous Mandatory FSA language that requires application of earned ETCs for eligible prisoners.

By its terms, the FSA plainly seeks to incentivize prisoners to better prepare themselves for a life outside prison by participating in and completing those programs and activities that the BOP, in its expertise, has designated as evidence-based recidivism reduction programs and productive activities, their rewards for doing so — assuming they also have led their prison lives in a manner that leads them to receive low or minimum recidivism risk assessments — is knowing that, by its terms, the FSA has told the BOP that it "shall" apply their earned ETCs and "shall offer" them early release. Allowing the BOP, on a belated and after-the-facts basis, to support to write into the FSA statutes a discretion for itself that does not appear therein and snatch away from prisoners whose efforts have earned them ETC-related benefits not only is unfair but would be contrary to the FSA's goal of incentivizing prisoners to engage in these salutary programs and activities.

Accordingly, I should be granted, pursuant to 18 U.S.C. §3632(d)(4)(C), (1) immediate application of my earned ETCs to date to calculate my applicable early release date, and (2) thereafter, release me on that early release date pursuant to an appropriate early release

option to be determined by the BOP.
Last line of Memorandum of Law

INMATE NAME/NUMBER: Eric Mout
FEDERAL CORRECTIONAL COMPLEX-ALL[ENWOOD]
P.O. BOX 2000
WHITE DEER, PA 17887

United States District Court
Eastern District of Pennsylvania
Ronald Reagan
Federal Building
228 Walnut Street
Harrisburg, PA, 17108-9228

RECEIVED
HARRISBURG, PA
MAY 16 2025
PER _____ DEPUTY CLERK

US POSTAGE — PITNEY BOWES
ZIP 17102 $ 001.77⁰
02 7W
0008028836 MAY 16 2025

FIRST-CLASS

RECEIVED MAY 21 2025

OFFICE OF THE CLERK
UNITED STATES DISTRICT COURT
SYLVIA H. RAMBO UNITED STATES COURTHOUSE
1501 NORTH 6TH STREET, SUITE 101
HARRISBURG, PA 17102

OFFICIAL BUSINESS